**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 17 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| M. A. R., a minor by and through his Guardian ad Litem Elisabeth Barragan, individually, and as a successor in interest to Daniel Rivera; SILVIA IMELDA RIVERA, individually,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>CITY OF LOS ANGELES; et al.,<br><br>Defendants-Appellees. | No.   22-55415<br><br>D.C. No.<br>2:21-cv-02957-FWS-MAR<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted June 7, 2023
Pasadena, California

Before: GRABER and OWENS, Circuit Judges, and TUNHEIM,[**] District Judge.

Daniel Rivera ("Decedent") died after an encounter with Defendant police

officers. His child and mother brought the present action alleging a variety of

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

claims, including excessive force in violation of the Fourth Amendment, deprivation of life without due process under 42 U.S.C. § 1983, and interference with the parent-child relationship under § 1983. The district court granted summary judgment to the Defendant officers on those three claims, and Plaintiffs timely appealed.[1] On de novo review, Rice v. Morehouse, 989 F.3d 1112, 1120 (9th Cir. 2021), we reverse and remand.

Here, viewing the evidence in the light most favorable to the non-moving party, id., a reasonable jury could conclude that Defendant officers used excessive force when they employed a taser four times in rapid succession and when they applied extensive pressure to Decedent's back by kneeling on him before, during, and after using the taser. Viewing the record in that light, we summarize the evidence as follows.[2]

When Defendant officers arrived at the scene in response to reports of an attempted residential burglary, Decedent appeared intoxicated. His hands were

---

[1] We have jurisdiction of this appeal under the principles described in Galaza v. Wolf, 954 F.3d 1267, 1270 (9th Cir. 2020), and Sneller v. City of Bainbridge Island, 606 F.3d 636, 638 (9th Cir. 2010). Although the dismissal of the only other federal claim was without prejudice, Plaintiffs' counsel confirmed unequivocally at oral argument that Plaintiffs have relinquished their Monell claim and will not attempt to revive it. Thus, there is no evidence of intent to manipulate appellate jurisdiction. Plaintiffs have stated a legitimate reason to bring their state claims in state court. Finally, the district court participated meaningfully in the dismissal.

[2] To the extent this disposition references information from sealed documents, the information is unsealed for purposes of the disposition.

visible and bore no weapons. (Nor were any weapons discovered in a later search.) He did not obey a command to get on the ground but, instead, climbed a fence and stumbled down an embankment. When Defendant officers reached him, Decedent was lying face down and motionless at the bottom of a drainage wash. Two officers, Defendants Beckstrom and Romero, pressed their knees into Decedent's upper torso; each applied more than half his weight to Decedent's back. Decedent tensed his body and grunted, but he posed no threat. With his hands on his head, Decedent began to move his shoulders and upper torso as the officers tried to handcuff him. During the attempt to secure the handcuffs, the two officers continued to press their knees into Decedent's back while he remained prone on the ground. Decedent tried to raise his head twice; both times, Defendant officers forced his head back to the ground. Decedent screamed and grunted in distress. Then Defendant Moser deployed his taser in three-point "drive-stun" mode. Decedent cried out in pain. Sixteen seconds later, Defendant Moser deployed the taser in "drive-stun" mode again on Decedent's left leg, causing neuromuscular incapacitation. Fourteen seconds later, Defendant Moser applied his taser—for the third time—on Decedent's left ankle, and again Decedent's legs displayed neuromuscular incapacitation. At this time, Defendant Beckstrom placed his whole weight onto Decedent's back. Eleven seconds after that, Defendant Moser tased Decedent a fourth time. Defendant Beckstrom kept his full weight on

3

Decedent and also pushed his right forearm into the back of Decedent's neck. Defendant officers succeeded in handcuffing and hobbling Decedent. By this point, Decedent was convulsing, grunting, and yelling uncontrollably. Decedent did not act aggressively or violently toward any of the officers when the hobble was applied. Nonetheless, two Defendant officers pushed down on Decedent's back again, and they continued to press down on his back even though he was convulsing and screaming. One Defendant officer told Decedent to "calm down. You got me all muddy and shit." Yet another Defendant officer pressed his knee onto Decedent's torso. Decedent died on the scene from "restraint asphyxiation and the force of the taser."

In light of our conclusion concerning excessive force, we must next determine whether the right to be free from excessive force of this kind in similar circumstances was clearly established when Defendant officers acted in August of 2020. See Rice, 989 F.3d at 1120–21 (describing analytical steps). We conclude that it was. At a minimum, Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052 (9th Cir. 2003), clearly established that kneeling on a person's back and neck, when not necessary and when obviously causing physical pain or harm, constitutes excessive force. Id. at 1059–60, 1063. At a minimum, Bonivert v. City of Clarkston, 883 F.3d 865 (9th Cir. 2018), clearly established that repeatedly using a taser in drive-stun mode on a person who is not posing an immediate threat

4

to officers raises a genuine issue of material fact precluding qualified immunity, even in the face of conflicting evidence that the person attacked an officer, screamed at officers using profanity, and continued to struggle and not obey officers' commands.  Id. at 879–81.  Bonivert relied, in turn, on the holding of Mattos v. Agarano, 661 F.3d 433, 445–46 (9th Cir. 2011) (en banc), that the use of a taser in drive-stun mode on a person who was actively resisting arrest but was posing no immediate threat to the safety of the officers or to others constitutes excessive force.  Bonivert, 883 F.3d at 879–80.

As the district court correctly recognized, Plaintiffs' § 1983 claims are derivative of their claim of excessive force because those claims are premised on an underlying constitutional violation.  Viewing the evidence in the light most favorable to Plaintiffs, a Fourth Amendment violation occurred.  Accordingly, we reverse and remand with respect to the § 1983 claims as well.

**REVERSED AND REMANDED.**